UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
ALLIANCE FOR OPEN SOCIETY
INTERNATIONAL, INC. *et al.*,

                    Plaintiffs,

        -against-

UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT *et al.*,

                    Defendants.
------------------------------------------------------------

05-CV-8209 (VM) (DF)

DECLARATION OF
CARLOS CARRAZANA ON
BEHALF OF SAVE THE
CHILDREN FEDERATION, INC.

I, Carlos Carrazana, hereby declare as follows:

1.      I am, and have been since 2012, the Executive Vice President and Chief

Operating Officer of Save the Children Federation, Inc. ("SCUS").

2.      I submit this declaration on behalf of SCUS in support of Plaintiffs' arguments at

the October 16, 2014 conference in this action.

### SCUS

3.      SCUS is a member of Plaintiff InterAction, a network of U.S.-based humanitarian

organizations.

4.      SCUS is a Connecticut non-stock corporation, with headquarters located at 501

Kings Highway East, Fairfield, Connecticut 06825.  It is recognized as a tax-exempt organization

under section 501(c)(3) of the Internal Revenue Code.

5.      Through its predecessor, the Save the Children Fund of America, SCUS has

operated in the United States since 1932, and is a member of the global Save the Children

1

moment, which began with the establishment of Save the Children Fund ("SCUK") in the United Kingdom in 1919.

6.     Since its founding, SCUS has worked to give children in the United States a healthy start, the opportunity to learn, and protection from harm, and since World War II, it has expanded these efforts on behalf of children around the world.

7.     SCUS's operating revenue reached $676 million in fiscal year 2013.  SCUS's funding is derived from grants and donations from multiple sources, including Defendants United States Agency for International Development ("USAID") and Department of Health and Human Services ("HHS"), as well as other United States government agencies, multilateral institutions, foundations, corporations, and individual donors.

**Save the Children Association and Save the Children International**

8.     There are currently national Save the Children organizations, such as SCUS and SCUK, incorporated in 30 countries around the world ("SC Members").  In addition to the United States and the United Kingdom, SC Members are located in Australia, Brazil, Canada, Denmark, Dominican Republic, Fiji, Finland, Germany, Guatemala, Honduras, Hong Kong, Iceland, India, Italy, Japan, Jordan, Korea, Lithuania, Mexico, Netherlands, New Zealand, Norway, Romania, South Africa, Spain, Swaziland, Sweden, and Switzerland.  All SC Members share a mission to inspire breakthroughs in the way the world treats children and to achieve immediate and lasting change in their lives.

9.     Prior to 2011, SCUS and the other SC Members were loosely linked through a Switzerland-based organization, the International Save the Children Alliance, which controlled use of the Save the Children name and logo.  SCUS and thirteen other SC Members had each carried out international programs during this period, and in some countries, various Save the

Children organizations (e.g. SCUS, SCUK, and others) operated independently from one another.

10.     In 2011, in order to achieve greater efficiency in their international programs, SC Members formed the Save the Children Association ("SCA"), a non-profit Swiss Association that owns the Save the Children logo and maintains criteria for SC Members, and its subsidiary, Save the Children International ("SCI"), a registered charity in the United Kingdom, which coordinates SCA Members' collective advocacy and programming around the world.

11.     Following this reorganization, the overseas offices and foreign operations of all SC Members—those offices and operations located in the more than 50 countries where no SC Member is located, such as Afghanistan, Bangladesh, Bolivia, Egypt, Ethiopia, Haiti, South Sudan, and West Bank/Gaza—were transferred to a unified management structure under SCI, though individual SC Members continued to manage programs within their own respective countries.  As such, with few exceptions, SCUS no longer maintains offices or directly manages projects outside the United States.

12.     By design, all funding for the operations of SCA and SCI is provided by the SC Members, and SCUS continues to raise funds for international programs, including from the U.S. government.  Those funds are then provided to SCI for program implementation pursuant to a set of legal agreements between SCI and SCUS.

13.     In 2013, with the efficiencies gained from this model, SC Members and SCI collectively worked in 120 countries around the world and reached more than 143 million children through humanitarian, health and nutrition, education, child protection, and governance programs.

### SCI Implementation of SCUS AIDS Relief Efforts

14.     Since the passage of the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 (the "Leadership Act") in 2003, SCUS has received numerous grants under the Leadership Act to fight HIV/AIDS in various countries.  Since 2011, SCI has carried out these programs on SCUS's behalf.  Using this model, SCUS intends to continue to apply for grants under the Leadership Act, when appropriate.

15.     For example, SCUS currently has funding from USAID, either through direct grants or subgrants from other organizations, for AIDS relief efforts in the Democratic Republic of the Congo, Ethiopia, Haiti, Malawi, Nigeria, South Sudan, and Zambia.  In each case, SCUS transfers funds for the project to SCI, which then implements the project on behalf of SCUS.

16.     At issue is the requirement under the Leadership Act that organizations receiving funds under that act adopt a policy opposing prostitution (the "Policy Requirement") and the implementation of the requirement by U.S. government funding agencies.  SCUS opposes this requirement based on well-founded concerns that it would alienate and impede our ability to serve the needs of the most vulnerable children, their families, and others affected by HIV/AIDS.

17.     Despite a contrary decision from the Supreme Court, it is SCUS's understanding, and strong evidence suggests, that the United States government intends to continue applying the Policy Requirement to SCI as a foreign organization, including its dozens of country offices around the world, despite SCI's affiliation with SCUS.

18.     As SCUS's implementing partner for overseas AIDS relief efforts, SCI is the mechanism through which SCUS puts into practice and communicates its position on issues such as prostitution within the countries where it operates.  Any position adopted and communicated by SCI in these countries will be imputed to SCUS, even if SCUS has no position or a contrary

position.  In the countries where it matters most, this requirement would effectively mute

SCUS's voice.

### SCUS and SCI Joint Advocacy Efforts

19.     Notwithstanding the legal distinctions between them, SCI, SCUS, and the other

SC Members are globally known as "Save the Children", and are viewed by the public as

speaking in a single global voice aligned to their common mission.

20.     Together, SCUS, SCI, and other SC Members develop coordinated policy

positions, based on evidence and operational experience, and they engage in coordinated policy

and advocacy work aimed at the public, governments, and multilateral institutions around the

world.

21.     Within the Save the Children Movement, SCUS is responsible for

communications with the United States public and government institutions, while other SC

Members are responsible for similar efforts in their own countries.  Advocacy to the United

Nations, the Global Fund to Fight, AIDS, Tuberculosis, and Malaria, and other multilateral

institutions is coordinated between SCUS, SCUK, SCI, and other SC Members.

22.     If SCI were required to adopt a policy opposing the legalization of prostitution, it

could jeopardize SCUS's credibility in the public debate within the United States about best

practices in the global fight against HIV/AIDS.  It could appear, for example, that SCUS was

advocating one view domestically while espousing and complying with an opposing policy

outside the United States.

23.     Save the Children's strength and effectiveness as a global movement is in its

collective, global identity and approach.  Requiring SCI to continue to adhere to the Policy

Requirement could result in inconsistent policy positions by SCUS and SCI or restriction of our

ability to speak on specific policy issues, dilution of the Save the Children brand and its collective voice, destruction of our common approach, and impairment of our ability to collaboratively accomplish our mission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 30th of October, 2014

Carlos Carrazana
Executive Vice President and Chief Operating Officer
Save the Children Federation, Inc.