

WILMERHALE

October 30, 2014

The Honorable Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**David W. Bowker**

+1 202 663 6558 (t)
+1 202 663 6363 (f)
david.bowker@wilmerhale.com

Re: *Alliance for Open Society International, Inc., et al. v. USAID, et al.*, 05 Civ. 8209 (VM)

Dear Judge Marrero:

I write on behalf of plaintiffs Alliance for Open Society International, Pathfinder International, InterAction and its members, and Global Health Council and its members ("Plaintiffs") in the above-referenced matter, in response to your Honor's request for the submission of any declarations and other evidence that Plaintiffs relied upon at the October 16 conference regarding Plaintiffs' request for a permanent injunction. Pursuant to that request, submitted in conjunction with this letter are a declaration from counsel, with exhibits; declarations from three Plaintiff organizations, including the declaration from which I quoted at the October 16 conference, with exhibits; and a proposed order enjoining the Defendants from further violating the Supreme Court order and Plaintiffs' First Amendment rights. This letter summarizes the context and significance of these materials, as discussed at the October 16 conference.

As explained in Plaintiffs' two pre-motion letters to the Court and at the October 16 conference, Plaintiffs seek a permanent injunction that enjoins two types of ongoing constitutional violations: (1) the Defendants' issuance of unconstitutional RFAs, RFPs, and other official communications that purport to impose the Policy Requirement on Plaintiffs and other U.S. NGOs, in violation of the Supreme Court's decision of June 20, 2013, striking down the Policy Requirement as unconstitutional (the "Unconstitutional Communications"); and (2) the Defendants' application of the Policy Requirement to foreign affiliates "clearly identified" with Plaintiffs or other U.S. organizations, in violation of the Supreme Court's decision, reasoning that the application of the Policy Requirement to Plaintiffs' affiliates would violate Plaintiffs' free speech rights by causing them to pay the "price of evident hypocrisy" (the "Unconstitutional Application to U.S. Organizations' Foreign Affiliates").

The discussion below separates the exhibits into three broad categories: (I) exhibits that relate to both types of constitutional violations; (II) exhibits that relate primarily to the first type of constitutional violation, *i.e.*, the Unconstitutional Communications; and (III) exhibits that relate primarily to the second type of constitutional violation, the application of the Policy Requirement to the foreign affiliates of U.S. organizations.

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 2

## I.    Exhibits Regarding Both Types of Constitutional Violations

Exhibit A:    *Transcript of this Court's conference on October 16, 2014.* Attached for the
convenience of the Court is a true and correct copy of the transcript of the
October 16 conference, which provides additional information and details
regarding the declarations and exhibits discussed below.

Exhibit L:    *Supreme Court decision of June 20, 2013.* Attached is a true and correct copy of
the decision of the Supreme Court of the United States, in *Agency for
International Development et al. v. Alliance for Open Society Int'l, Inc. et al.*, 133
S. Ct. 2321 (2013), demonstrating that—as discussed at the October 16
conference—more than a year ago the Supreme Court (1) struck down the Policy
Requirement as unconstitutional, *id.* at 2332; and (2) rejected the Defendants'
efforts to use so-called "affiliate guidelines" as a way of "cabin[ing] the effects"
of the Policy Requirement to Plaintiffs' foreign affiliates, *id.* at 2331. As the
Supreme Court made clear, it would be unconstitutional to apply the Policy
Requirement to Plaintiffs' foreign affiliates, not because those foreign affiliates
have independent First Amendment rights (although some may), but rather
because the application of the Policy Requirement to foreign organizations that
are "clearly identified" with U.S. organizations (such as Plaintiffs) would have an
unconstitutional effect on the free speech rights of those U.S. organizations, *e.g.*,
by making it impossible for them to express any contrary belief without paying
"the price of evident hypocrisy." *Id.*

## II.    Exhibits Regarding Unconstitutional Communications

Exhibits D-1 through D-13:

Unconstitutional RFAs and RFPs issued after the Supreme Court's order. At the
October 16 conference, I represented to the Court that the Defendants had
continued for many months after the Supreme Court's order—and as recently as
July 2014, more than year after the Court's decision—to issue RFAs and RFPs
that still purported to apply the Policy Requirement to U.S. NGOs,
notwithstanding the Supreme Court's decision striking down the Policy
Requirement as unconstitutional. In response, the government stated: "There is
simply no issue here about the communications that were in compliance with this
Court's injunction all along[.]" Conference Transcript ("Tr.") at 11:10-13. As I
stated at the conference, it is simply "not true" that the Defendants'
communications have been in compliance "all along." *Id.* at 19:25. We have
identified many offensive funding communications that have purported to apply

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 3

> the Policy Requirement to U.S. organizations, long after the Supreme Court's
> decision. *See, e.g.*, *id.* at 8:8-9, 14:24-25, 20:1-4.  Examples of those documents
> are attached to my declaration as Exhibits D-1 to D-13.  These documents
> demonstrate that, as I said at the October 16 conference, the government has
> continued for more than a year to issue unconstitutional communications in
> violation of the Supreme Court's ruling.

Exhibits C through D-13:

> *Unconstitutional RFAs and RFPs that sometimes do and sometimes do not
> include a footnote purporting to exempt Plaintiffs, but not other U.S.
> organizations, from the Policy Requirement.*  After this Court issued the second
> preliminary injunction (in 2008), the government failed to make necessary
> changes to its RFAs, RFPs, and other communications in a timely manner.  In
> some cases, it took the government more than two years to bring its
> communications into compliance with the preliminary injunction.  By 2010, the
> government had included a footnote in most (but not all) RFAs, RFPs, and other
> communications, stating that the Policy Requirement will not be enforced against
> the Plaintiffs to this action, per this Court's preliminary injunction.  *Id.* at 13:3-10.
> An example of such a document is attached to my declaration as Exhibit C.
>
> Any footnote attempting to comply with this Court's 2008 preliminary injunction
> (the "old footnote"), however, obviously is insufficient to comply with the
> Supreme Court's 2013 decision.  The problem with the communications
> containing the old footnote is two-fold.  First, these communications create the
> misimpression that the Policy Requirement is lawful and applies to all
> organizations, absent an "exemption."  This simply does not comport with the
> letter or spirit of a Supreme Court decision holding that the Policy Requirement is
> unconstitutional.  To the extent the government believes it can continue to apply
> the Policy Requirement to a narrow group of independent foreign organizations
> that supposedly lack rights, the government should include a footnote or sentence
> to that effect, as it has in certain communications issued by HHS (*see* discussion
> of Defendant HHS's communications, below).  Second, these communications
> with the old footnote are unconstitutional because the footnote, by its terms,
> protects only the Plaintiffs and does not protect all U.S. organizations and their
> foreign affiliates, as required by the Supreme Court's ruling.
>
> Notwithstanding these fatal problems, the government insists that the
> communications with the old footnote are somehow lawful, even after the
> Supreme Court's 2013 decision.  *See* Tr. at 10:21-22.  Indeed, the government

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 4

continued to issue some such communications long after the Supreme Court's
decision. *See, e.g.*, Exh. D-5, D-6, D-8.

Most egregiously, in many of the offensive documents we have found, the
relevant footnote was removed altogether, and the Policy Requirement was
simply left in place—applicable to all U.S. NGOs, without exception—and there
is no reference at all to this Court's preliminary injunction *or* the Supreme Court
decision. *See* Tr. at 28:13-19. *See* Exhs. D-1, D-2, D-3, D-10, D-11, D-12, D-13.
There is no defense for issuing communications of this sort after the Supreme
Court's decision, *see* Tr. at 5:17-23, and the government posited none at the
hearing.

In light of these unconstitutional communications and the government's insistence
that they comply with the Supreme Court's decision, a permanent injunction is
needed to bring an end to these unlawful practices and to ensure that the
Government does not continue to issue communications purporting to apply the
Policy Requirement to U.S. NGOs and their foreign affiliates, in violation of the
Supreme Court's decision.

## Exhibit E:

*Confusing RFAs / RFPs issued after the September 2014 "Guidance."* At the
hearing, I also focused on a separate problem concerning Defendant USAID's
most recent communications, which are confusing and misleading. Tr. 21:23-25.
These communications start with the premise that the Policy Requirement is
generally applicable, subject to so-called "exemptions" for certain organizations.
I discussed an example from October 10, 2014, and explained that Plaintiffs read
this language—which is unclear to any non-lawyer employees in the field—and
often conclude that the government is still purporting to apply the Policy
Requirement to U.S. NGOs. *See* Tr. 21:23-25. The October 10 communication is
attached to my declaration as Exhibit E.

As the October 10 communication demonstrates, Defendant USAID's most recent
communications start from the incorrect premise that the Policy Requirement is
generally applicable, unless particular applicants qualify for an "exemption."
Such an approach violates both the letter and spirit of the Supreme Court's
decision, which struck down the Policy Requirement as unconstitutional and
made no mention of any "exemptions" or "exceptions." Notably, the government
never once argued before the Supreme Court that there should be exemptions or

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 5

exceptions for any organizations in the event the Policy Requirement were struck down. At the October 16 conference, even the government's own counsel conceded that the approach to the Policy Requirement in these communications is "a little backward," *id.* at 17:1. Indeed, such communications are so "backward" that they have caused Plaintiffs to believe that the Policy Requirement will be applied to Plaintiffs and other U.S. NGOs, without regard to the Supreme Court's decision.

Counsel for the government tried to defend Defendant USAID's communications, but counsel could not explain why Defendant USAID has taken its "backward" approach; nor could he explain why Defendant USAID has departed from Defendant HHS's more straightforward approach. At the October 16 conference, I identified communications from Defendant HHS that use substantially less confusing language. These communications make clear that the Policy Requirement is not the default but rather is an "additional requirement" imposed only on foreign organizations. (Plaintiffs take issue with the application of the Policy Requirement to the foreign affiliates of U.S. organizations, as discussed below and at the October 16 conference, but at least Defendant HHS has taken this clearer approach with respect to U.S. organizations.) An example of such a communication from HHS is attached to my declaration as Exhibit F.

As this Court recognized on October 16, there is no "efficiency value" in Defendant USAID maintaining the confusing communications "exempt[ing]" U.S. organizations when clearer language is available and indeed used by other government agencies. Tr. at 25:13-15. For that reason, we believe that Defendant USAID should be ordered to issue communications that mimic Defendant HHS's most recent, clearer communications; we object to Defendant HHS's clearer communications only to the extent that they continue to apply the Policy Requirement to our clients' foreign affiliates.

Exhibit B:

*Correspondence demonstrating the Defendants' history of unconstitutional communications and Plaintiffs written complaints.* Despite the Supreme Court's unequivocal ruling in June 2013 that the Policy Requirement is unconstitutional, Defendants continued to issue funding documents that did not properly account for that ruling for more than a year. At the October 16 conference, in response to Plaintiffs' complaint about these offensive funding documents, the government asserted: "For eight years we have been issuing the same communication. We have not heard a single complaint from the plaintiffs." Tr. at 10:18-20. As I

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 6

stated at the conference, "that is patently false." *Id.* at 11:23; *see also id.* at 13:10-12.  At the conference, I referred to correspondence in 2009 and 2010, in which Plaintiffs complained about government communications that violated this Court's preliminary injunction order that had been in place since 2008. *Id.* at 11:24 – 12:9.  That correspondence is attached to my declaration as Exhibit B.  It includes letters detailing "plaintiffs' concerns" that certain funding documents still "include[d] the full unmodified clause on 'Prostitution and Related Activities' as standard contract language." Exh. B at 5; *see also* Exh. B at 9.  It is worth noting that in the course of that correspondence the government took the indefensible position that this Court's preliminary injunctions of the Policy Requirement did not apply to the government's funding communications, even though such communications are the principal means by which the government communicates the Policy Requirement to Leadership Act applicants.  Exh. B at 11.  Of course, as I also explained at the conference, following the Supreme Court's unequivocal holding that the Policy Requirement is unconstitutional, Plaintiffs and their counsel have objected and complained for more than a year in an effort to bring the Defendants' funding communications into line with the Supreme Court's decision.  Tr. at 5:20-23.

### III.   Exhibits and Declarations Regarding Unconstitutional Application of the Policy Requirement to U.S. Organizations' Foreign Affiliates

At the conference, the Court asked "what might be the process for further proceedings" and "what more needs to be put on the record in order to facilitate a resolution by this Court?" *Id.* at 3:24-25; *see also id.* at 4:8-9.  As I mentioned, with respect to the application of the Policy Requirement to foreign affiliates, I do not believe much more is required because "[t]hese issues are long litigated and no longer complicated." *Id.* at 8:4-8.  Specifically, the government argued in the Second Circuit and the Supreme Court that the effects of imposing the Policy Requirement on foreign affiliates of U.S.-based organizations could be cabined to the foreign affiliates—essentially the same arguments the government now advances in this Court—and those courts rejected the argument. *Id.* at 8:14–9:7, 29:20–30:6.  My declaration attaches, as Exhibits G through L, highlighted copies of the government's briefs, oral argument transcripts, and court decisions showing as much.

Exhibit G-L:   *Excerpts of the Defendants' Second Circuit and Supreme Court briefs and arguments, and those courts' decisions.*  I have attached true and correct copies of excerpts of the Defendants' Second Circuit and Supreme Court briefs and oral argument transcripts, and the court decisions that address those arguments, in support of my assertions at the October 16 conference that the foreign affiliate issue was previously litigated and decided by the Second Circuit and the Supreme

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 7

> Court. The Defendants' contrary contention is belied by these documents. As the
> attached excerpts show, the Defendants repeatedly argued that the Policy
> Requirement could be saved by applying it only to Plaintiffs' foreign affiliates
> and thereby "cabining" the effects of the Policy Requirement to the affiliated
> entities.
>
> For instance, the government's opening brief in the Supreme Court argued that
> "by allowing respondents to form special-purpose affiliates (and thereby cabin the
> effects of Section 7631(f) to the scope of the federally funded programs at issue),
> the agencies' guidelines appropriately confine any burden that might otherwise
> exist on the communication of contrary views on prostitution and sex trafficking."
> Exhibit I at 48-49. The Supreme Court rejected this argument, stating:
>
>> The Government suggests the guidelines alleviate any
>> unconstitutional burden on the respondents' First
>> Amendment rights by allowing them to either: (1) accept
>> Leadership Act funding and comply with Policy
>> Requirement, but establish affiliates to communicate
>> contrary views on prostitution; or (2) decline funding
>> themselves (thus remaining free to express their own views
>> or remain neutral), while creating affiliates whose sole
>> purpose is to receive and administer Leadership Act funds,
>> thereby "cabin[ing] the effects" of the Policy Requirement
>> within the scope of the federal program. Brief for
>> Petitioners 38–39, 44–49. *Neither approach is sufficient*.
>
> Exh. L at 133 S.Ct at 2331 (emphasis added).

As I asserted at the October 16 conference, the Second Circuit and the Supreme Court both
considered and squarely rejected the Defendants' attempt to impose the Policy Requirement on
Plaintiffs' foreign affiliates. The Supreme Court reasoned that the Policy Requirement, by its
nature, cannot be confined to an affiliate organization "when the condition is that [the affiliate]
espouse a specific belief as its own." *Id.* The problem, of course, is that "[i]f the affiliate is
more clearly identified with the recipient, the recipient can express those beliefs only at the price
of evident hypocrisy." *Id.* As the Supreme Court recognized, the Policy Requirement impacts
not just the particular entity that receives the funding and takes the pledge. Rather, it affects the
entire organization, without regard to corporate or national boundaries. The Supreme Court
made this clear in its discussion and rejection of the proposed affiliate guidelines. *See id.*
(holding that the guidelines do not "alleviate the unconstitutional burden on [Plaintiffs'] First

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 8

Amendment rights" because the Policy Requirement cannot be "cabin[ed]" to the Plaintiffs' foreign affiliates).

As an additional response to your question about "what more needs to be put on the record in order to facilitate a resolution by this Court," Tr. at 4:8-9, I explained that we have signed declarations from a representative subset of our clients—CARE, Pathfinder, and Save the Children—that supply "evidence ... of how the imposition of the policy requirement on [Plaintiffs'] foreign affiliates harms our U.S. organizations," *id.* at 8:9-13, 10:2-3. Those declarations, which have been submitted in conjunction with this letter, show that foreign affiliates are essential to the success of each Plaintiff organization and that it is critical that each Plaintiff organization and its foreign affiliates are perceived as speaking with one voice. The declarations also demonstrate the significant steps taken by these organizations to avoid "pay[ing] the price of evident hypocrisy" in order to express themselves, and the damage caused to the organizations when such price is paid.

Declarations from Plaintiffs:

> *Declaration of Helene Gayle, President and Chief Executive Officer of the Cooperative for Assistance and Relief Everywhere, Inc. ("CARE USA"), and accompanying exhibits.*

> *Declaration of Purnima Mane, President and Chief Executive Officer of Pathfinder International ("Pathfinder"), and accompanying exhibits.*

> *Declaration of Carlos Carrazana, Executive Vice President and Chief Operating Officer of Save the Children Federation, Inc. ("SCUS"), and accompanying exhibits.*

> I have enclosed the Gayle Declaration, the Mane Declaration, and the Miles Declaration (and the exhibits thereto) in support of my assertions at the October 16 conference that Plaintiffs themselves—all of which are U.S. organizations with constitutional rights—suffer unconstitutional harm to their First Amendment rights when the government seeks to apply the Policy Requirement to their foreign affiliates. The Supreme Court has already found that Plaintiffs suffer unconstitutional harm when the Policy Requirement is applied to affiliates "clearly identified" with Plaintiffs, and the three Plaintiff declaration provide further evidence of this fact. In addition, the exhibits to the declarations show how the foreign affiliates are "clearly identified" with the U.S. organizations, and are otherwise responsive to your Honor's request for any written evidence of

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 9

> policies or agreements demonstrating that Plaintiffs and their affiliates adhere to a
> common mission, policies, or positions.

As this and other evidence in the record demonstrates, the Defendants have continued to violate
the First Amendment and the orders and decisions of this Court, the Second Circuit, and the
Supreme Court. Plaintiffs have repeatedly—for more than year—tried to resolve these issues
outside of litigation, but to no avail. The Defendants have continued to violate the Constitution
and the courts' orders by issuing unconstitutional communications and applying the Policy
Requirement to foreign affiliates clearly identified with U.S. organizations, notwithstanding the
Supreme Court's ruling that the Policy Requirement violates the First Amendment and cannot be
applied in this way. Under these extraordinary circumstances, Plaintiffs hereby respectfully
renew their request for a permanent injunction that (1) enjoins the Defendants from continuing to
issue unconstitutional RFAs, RFPs, and other communications; (2) enjoins the Defendants from
applying the Policy Requirement to the foreign affiliates of U.S. organizations; and (3) imposes
fines for any further violations of the courts' orders.

At the October 16 conference, this Court asked Plaintiffs what "punishment would be
appropriate" for the government's intransigence in obeying the Supreme Court's order. Tr.
30:18. We respectfully renew our request that in addition to issuing a permanent injunction, the
Court order the Defendants to pay the fees, costs, and expenses incurred in connection with
Plaintiffs' efforts to enforce the Supreme Court's decision and order whatever additional relief
the Court deems appropriate, pursuant to its inherent authority to "impose ... submission to its
lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (quoting *Anderson v. Dunn*,
19 U.S. 204, 227 (1821)); *see also Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (noting
that court's inherent powers may warrant sanctions where "the conduct of the sanctioned litigant
or attorney evinces . . . bad faith or an egregious disrespect for the Court or judicial process").
After nine years of litigation and a decisive victory at the Supreme Court, Defendants' repeated
issuance of communications that flout the orders of both this Court and the Supreme Court is
inexcusable and cannot be explained by mere bureaucratic sluggishness—especially in light of
Plaintiffs' repeated attempts to work with Defendants to address these issues. Importantly,
recent events suggest that when the Government deems it useful to move quickly on these issues,
it can do so; after the Government promulgated its "guidance" in September of this year, it began
issuing "corrected" RFAs/RFPs within days. *See, e.g.*, Exh. E. Moreover, Defendants' recent
behavior—including their assertion that the Supreme Court's order does not address the foreign
affiliate issue—is of a piece with their recalcitrant approach to implementing court orders
throughout this litigation. Indeed, the Government's unwillingness to fully implement the
Supreme Court's decision may flow from the indefensible position it first took years ago, that
this Court's preliminary injunction against enforcement of the Policy Requirement does not
"govern solicitations," the principle means through which the Government disseminates the
Policy Requirement to Plaintiffs. *See, e.g.*, Exh. B at 11; *supra* at 6-7. At every turn,

WILMERHALE

Hon. Victor Marrero
October 30, 2014
Page 10

Defendants have failed to implement court orders of their own volition, instead requiring Plaintiffs or their pro bono counsel to press them or threaten further litigation. Attorneys' fees and costs are an appropriate sanction in these circumstances.

Plaintiffs respectfully request that this letter be docketed. Plaintiffs would welcome the opportunity to provide any additional information the Court may require.

Respectfully submitted,

/s/ David W. Bowker

David W. Bowker

cc:    Ben Torrance, esq.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _plaintiffs_.

SO ORDERED.

_10-31-14_
DATE                    VICTOR MARRERO, U.S.D.J.